```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                      :
IN RE:  BALLY TOTAL FITNESS OF        :
GREATER NEW YORK, INC., et al.,       :    09 Civ. 4250 (JSR)
                                      :
            Debtors.                  :    MEMORANDUM ORDER
                                      :
------------------------------------- x
                                      :
CARRERA PLAINTIFFS,                   :
                                      :
            Plaintiffs-Appellants,    :
                                      :
       -v-                            :
                                      :
BALLY TOTAL FITNESS OF GREATER NEW    :
YORK, et al.,                         :
                                      :
            Defendants-Appellees.     :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

    Plaintiffs Cesar Carrera, Kevin Lai, and Danna Brown (the "Carrera Plaintiffs"), on behalf of themselves and all others similarly situated, appeal from an order of the United States Bankruptcy Court (Lifland, B.J.), dated April 7, 2009 denying plaintiffs' motions to allow a class proof of claim, to grant class certification, and/or to lift the automatic stay. After careful consideration of the parties' briefs and arguments, the Court, by Order dated July 24, 2009, affirmed the Bankruptcy Court's order and also denied plaintiffs' request that this Court withdraw the reference to the Bankruptcy Court. This Memorandum explains the reasons for those rulings and directs the entry of final judgment.

    The Carrera Plaintiffs commenced this action on December 30, 2005 by filing a wage and hour class action lawsuit against Bally Total Fitness Corporation and Bally Total Fitness of California in

California state court (the "Carrera Action"). The Complaint in the Carrera Action asserts claims for failure to pay off-the-clock work, forfeiture of sales commissions, failure to provide mandated meal and rest periods, failure to provide timely itemized wage statements, failure to provide timely and accurate paychecks, and failure to reimburse business expenses. See docket no. 603, Ex. A. Plaintiffs' proposed class period extends from December 30, 2001 to December 3, 2008, and involves somewhere between 3,180 and 5,000 present and former employees who worked at approximately 65 Bally clubs in California. Docket no. 603 at 4; Pl. Mem. at 11 n.6.

Prior to Bally's filing for bankruptcy, the Bally defendants in the Carrera Action moved to compel individual arbitration of plaintiffs' claims, based on a provision of plaintiffs' employment contract that purportedly requires plaintiffs to submit employment-related claims to arbitration and that requires disputes relating to one employee not to be submitted in the same proceeding as disputes relating to any other employee. See docket no. 636, Exs. A-C, Sections 1.1, 8.4; Declaration of Paul J. Coady ¶ 2. On April 29, 2008, the California trial court denied the motion. The Bally defendants promptly appealed, see docket no. 603, Ex. B, and the Carrera Action was stayed pending resolution of that appeal.

On December 3, 2008, debtors Bally Total Fitness Holding Corporation and its subsidiaries (collectively "Bally") petitioned for reorganization under Chapter 11 of the United States Bankruptcy Code. On January 23, 2009, the Bankruptcy Court entered an order

establishing March 9, 2009 (the "Bar Date") as the deadline for filing proofs of claim against the Debtors. On approximately February 12, 2009, Debtors mailed notice of the Bar Date by first-class mail to, <u>inter alia</u>, all current Bally employees and all former employees whose employment had terminated any time after January 1, 2004. Debtors also caused notice of the Bar Date to be published in the Chicago Tribune (Bally's headquarters is located in Chicago) and the national edition of USA Today. <u>See</u> docket nos. 608, 609.

On February 11, 2009, plaintiffs moved in the Bankruptcy Court to allow a class proof of claim, and on March 10, 2009, plaintiffs moved for class certification, or in the alternative, an order lifting the automatic stay so that the Carrera Action could proceed in California state court. On March 24, 2009, the Bankruptcy Court denied both motions, and on April 7, 2009, that Court issued a written order explaining the reasons for that determination. The instant appeal followed.

Turning first to plaintiffs' motions for a class proof of claim and/or for class certification, the Court notes that neither the Bankruptcy Code nor Bankruptcy Rules explicitly addresses class treatment of claims that become the subject of bankruptcy proceedings. Nor has the United States Supreme Court or the Second Circuit Court of Appeals directly addressed whether class treatment is available in the context of a bankruptcy. Nevertheless, several bankruptcy and district courts in this Circuit, as elsewhere, have concluded that class treatment may be permitted in bankruptcy

3

proceedings when the proposed class was certified pre-petition, when the members of the putative class received adequate notice of the bar date, and when class certification will not adversely affect the administration of the case.  See, e.g., In re Musicland Holding Corp., 362 B.R. 644, 654-55 (Bankr. S.D.N.Y. 2007); In re Ephedra Prods. Liability Litig., 329 B.R. 1, 4-5 (S.D.N.Y. 2005); Bailey v. Jamesway Corp. (In re Jamesway Corp.), No. 95 B 44821, 1997 Bankr. LEXIS 825, at *35-36 (Bankr. S.D.N.Y. 1997); In re Sacred Heart Hosp. of Norristown, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995); In re Chateaugay Corp., 104 B.R. 626 (S.D.N.Y. 1989).

Here, no class was certified pre-petition, nor, indeed, did the Carrera Plaintiffs move for class certification during the three years their action was pending in California state court prior to Bally's filing for bankruptcy.  Although this alone might have warranted denial of the plaintiffs' motions for class treatment, the Bankruptcy Judge also considered the requirements for class certification of a bankruptcy claim and found they were lacking in this case.  In particular, the Bankruptcy Court found that in the context of the instant bankruptcy proceeding, class treatment was neither "superior to other available methods for fairly and efficiently adjudicating the controversy," nor that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  See Fed. R. Civ. P. 23(b)(3). In so concluding, the Bankruptcy Court did not remotely abuse its discretion.

4

Regarding plaintiff's failure to show the superiority of class treatment, it bears emphasizing that where, as here, a bankruptcy proceeding "consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost," In re Ephedra, 329 B.R. at 9, many of the perceived advantages of class treatment drop away. Individual creditors in bankruptcy proceedings "can participate in the distribution [of the estate] for the price of a stamp. They need only fill out and return the proof of claim sent with the Bar Date Notice," often avoiding discovery and fact-finding altogether. In re Musicland Holding Corp., 362 B.R. at 650 n.8. Moreover, these small claims are commonly "deemed allowed," without objection, under § 502(a) of the Bankruptcy Code, thus avoiding altogether the costs of discovery and fact-finding that, even in a class action, are considerable.

Although plaintiffs argue that only a class action can achieve a "deterrent" effect and that this is particularly valuable where the debtor will re-emerge after reorganization, it bears noting that, of the thousands of present and former Bally employees who received notice of the Bar Date, only a handful -- indeed, seemingly only the three named plaintiffs -- have filed claims based on the allegations set forth in the Carrera Action, thus suggesting that the need for deterrence here, if any, is de minimis.

Plaintiffs further argue that class action treatment is superior because its practice of mailed notice is superior to "the usual bankruptcy notice by publication," (quoting In re Ephedra, 329 B.R. at 9). Here, however, it is undisputed that Bally mailed notice of

5

the Bar Date by first-class mail to all current and former employees employed at any time after January 1, 2004. While a much smaller part of the putative class, namely, those former Bally employees whose employment ended between December 30, 2001 and January 1, 2004, received only notice by publication, this was still legally adequate, see, e.g., In re Musicland Holding Corp., 362 B.R. at 657; In re Jamesway Corp., 1997 Bankr. LEXIS 825, at *30; In re Sacred Heart Hosp., 177 B.R. at 22. And the fact that, as noted, only a tiny portion of those who received actual notice filed claims strongly suggests that the failure to give more than publication notice to this long-gone group of former employees is hardly a weighty factor in determining whether class action treatment is superior here.

Finally, in what comes close an ad hominem attack, plaintiffs twice assert that the able and experienced Bankruptcy Judge denied class action status here because, having been reversed 20 or so years ago when he held that class action treatment was not available in bankrupcty proceedings generally, he continued to persist in his erroneous views. Quite aside from the scurrilous nature of these slurs, they are without foundation, for on any fair reading it is clear that the Bankruptcy Court made its determination in the context of the facts of the particular case. For what its worth, moreover, if this Court had been called upon to determine the matter de novo, it would have agreed with the Bankruptcy Court in its determination that, in this particular case, plaintiffs have failed to demonstrate the superiority of class treatment.

Nor have plaintiffs demonstrated that the Bankruptcy Court abused its discretion in concluding that Rule 23's predominance requirement or its equivalent has not been satisfied. Generally speaking, "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132, 13 (S.D.N.Y. 2008) (citation omitted). Here, in appealing, plaintiffs argue that their claims are based on what they allege are Bally's uniform policies and practices that will be proved with generalized proof. As the Bankruptcy Court noted, however, plaintiffs' claims also require individual analysis with respect to numerous legal and factual issues, including, inter alia, whether plaintiffs performed "hours worked" as defined under California law, whether Bally "suffered" off-the-clock work, whether each individual plaintiff's unpaid time is de minimis, whether Bally compensated each class member for the work he or she allegedly performed, whether Bally reimbursed each plaintiff's business expenses, and whether each plaintiff's meal and rest period claims were justified. See Bankruptcy Order, 4/7/09, at 9. As the Bankruptcy Court observed, "the Court would have to engage in a series of highly disputed mini-trials for each class member to resolve [such] issues [], making class treatment untenable and implausible." Id. In light of the numerous questions of law and fact that require individualized proof, it is clear that the

7

Bankruptcy Court did not abuse its discretion when it determined that plaintiffs had failed to show that general questions of law and fact predominated over the individual questions.

Turning to plaintiffs' alternative application to be relieved from the automatic stay, courts in the Second Circuit, when deciding whether pending litigation against a debtor should be permitted to continue notwithstanding the bankruptcy proceedings, consider and weigh the various factors set forth in In re Sonnax Industries, Inc., 907 F.2d 1280 (2d Cir. 1990). The inquiry is committed to the sound discretion of the bankruptcy court, see id. at 1286, and is therefore reviewed for abuse of discretion.

Here, the Bankruptcy Court's analysis of the relevant factors was altogether sound. To begin with, the Carrera Action is nowhere near being ready for trial, because, even though substantial discovery has occurred, there is pending Bally's appeal from the lower court's denial of its motion for individualized arbitration, which would have to be resolved before the underlying action could further proceed. Moreover, as noted, the Carrera Plaintiffs have not yet moved in the California action for class treatment, and such would necessitate still further delay.

At the same time, it is clear that permitting plaintiffs to pursue their claims in California state court would unduly interfere with the reorganization process, and would risk causing "the Debtors to refocus their energies on litigation . . . rather than emergence from Chapter 11." In re Northwest Airlines Corp., No. 05-17930, 2006 WL 2583647, at *2 (Bankr. S.D.N.Y. 2006); see In re Woodward &

8

Lothrop Holdings, Inc., 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997) ("a class action may 'gum up the works' because until complete, the bankruptcy court cannot determine the entitlement of other creditors"). Indeed, a confirmation hearing on Debtors' plan of reorganization is already scheduled to be held a few weeks hence, and permitting relief from the stay at this stage would unquestionably call the feasibility of that plan into question. Further, lifting the automatic stay and permitting the Carrera Action to proceed as a class action would necessarily prejudice other creditors' interests by preserving the claims of class members who failed to assert timely claims. See, e.g., Jamesway, 1997 Bankr. LEXIS 825, at *35.

Although plaintiffs note that the Complex Litigation Panel of the Los Angeles County Superior Court (to which the Carrera Action is assigned) possesses the necessary expertise to resolve plaintiffs' claims, there is no indication that the Bankruptcy Court is not at least as well equipped to handle plaintiffs' claims, which do not involve any arcane or complicated questions of law. Plaintiffs also note that because the California state judge has presided over the Carrera Action for several years, the interests of judicial economy and expeditious resolution of litigation weigh heavily in favor of lifting the stay. As already discussed in the context of plaintiffs' motion for class certification, however, bankruptcy provides the most expeditious and efficient path for the resolution of all creditors' claims.

As to the impact of the stay on the parties and the concomitant balance of harms, plaintiffs contend that the Bankruptcy Court's

9

decision somehow demonstrates an indifference to the rights of all putative class members. The automatic stay is entered in the first place, however, to ensure that a debtor can efficiently reorganize, and "to preserve [debtor's] property for distribution or for use in reorganization of the debtor." In re Prudential Lines, Inc., 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989). This rationale, together with plaintiffs' ability to individually pursue their claims in the instant action, demonstrate that the Bankruptcy Court did not err in concluding that the Debtors' resources were best spent focusing on the instant reorganization.

In short, upon consideration, nothing in the record demonstrates that the Bankruptcy Court abused its discretion, or "acted in an arbitrary and irrational fashion," Tesser v. Bd. of Educ., 370 F.3d 314, 318 (2d Cir. 2004) (citation omitted), when refusing to lift the automatic stay.

Finally, plaintiffs also argue on this appeal, for the first time, that this Court should exercise its discretion to withdraw the reference to the Bankruptcy Court because this action is "non-core," bankruptcy courts are not permitted to hold jury trials in non-core matters absent consent, and plaintiffs are not willing to consent to a jury trial before the Bankruptcy Court. Plaintiffs fail to recognize, however, that core proceedings include, inter alia, "allowance or disallowance of claims against the estate," together with "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 175(b)(2). Further, even if this action were not core, plaintiffs waived their ability to seek withdrawal of

10

the reference when they filed a proof of claim and two motions before the Bankruptcy Court. See In re CBI Holding Co., 529 F.3d 432, 466-67 (2d Cir. 2008) ("[f]iling a proof of claim against a bankruptcy estate triggers the process of allowance and disallowance of claims, and, therefore, a creditor who files such a claim subjects itself to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim . . . [A] creditor loses its jury trial right with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim").

Accordingly, for each and all of the foregoing reasons, the Court affirms the Bankruptcy Court's order denying plaintiffs' motions to allow a class proof of claim, certify a class action, and/or lift the automatic stay, and the Court also denies plaintiffs' motion to withdraw the reference to the Bankruptcy Court. Clerk to enter judgment.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York
         August 7, 2009